# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ORLANDO GRIFFIN (#513864)**                    **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, WARDEN**                          **NO. 12-0545-SDD-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The State has filed a response in opposition to the petitioner's application. There is no need for oral argument or for an evidentiary hearing.

The petitioner, Orlando Griffin, challenges his conviction and sentence, entered in 2006 in the Eighteenth Judicial District Court for the Parish of West Baton Rouge, State of Louisiana, on one count of second degree murder and one count of attempted second degree murder. The petitioner contends (1) that the evidence was insufficient to support the verdict, (2) that the imposition of a separate three-year sentence for an unrelated offense of unauthorized entry of an inhabited dwelling resulted in an excessive sentence, (3) that he was provided with ineffective assistance of counsel at trial when his attorney refused to allow him to testify, and (4) that the State failed to disclose statements made by two witnesses in advance of trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

### Factual Background

It is undisputed that on the evening of November 27, 2005, the petitioner shot and killed Kelvin Murphy and shot and injured Kendrick Walls at a nightclub called Bill's Place, located in Port Allen, Louisiana. According to the testimony of William and Lacey Henderson, who were

at the bar that evening, the petitioner was also at the bar and was acting strangely.[1]  At one point, he approached the Hendersons' table, raised up his shirt to display a firearm tucked in his waistband, and made a comment which Lacy Henderson interpreted to be a threat to kill her husband, *i.e.*, that the petitioner should have "laid [her husband] down" after her husband embarrassed him during a pool game several days previously.  A short while later, however, the petitioner again approached the table and this time was amiable.  Notwithstanding, later in the evening, outside the bar, the petitioner again approached William Henderson about the pool game, but Henderson avoided further confrontation by re-entering the bar, leaving the petitioner outside.  William Henderson testified that shortly after he re-entered the bar and sat down at his table, one of the victims, Kelvin Murphy, entered the bar and collapsed on the floor.  Shortly thereafter, the second victim, Kendrick Walls, was found lying outside on the ground.  Both victims had been shot more than once and both had been shot from behind.  A forensics expert testified that all of the shell casings recovered from the scene had been fired from a single weapon.  In addition, a medical expert testified that an autopsy of the deceased, Kelvin Murphy, revealed that the body displayed no stippling or gun residue markings and that this absence compelled a conclusion that the weapon had not been fired at close range but instead had been fired from a distance of more than three or four feet.

The surviving victim, Kendrick Walls, testified that he and Kelvin Murphy had been at the bar during the evening but decided to leave at some point.  As they exited the bar, and immediately upon getting outside, the petitioner shot Murphy in the back of the head.  According

---

1.  Lacey Henderson is the sister of one of the victims, Kendrick Walls, and is the cousin of the other victim, Kelvin Murphy.

to Walls, the shooting was unprovoked, and there had been no prior conflict between the petitioner and the victims that evening. After being shot, Murphy stumbled back toward the bar, holding his wounded head. As Walls attempted to follow, the petitioner shot Walls, also from behind. Walls fell to the ground and was shot again by the petitioner. As previously noted, the petitioner does not dispute that he is the person who shot the two victims.

The defense called a single witness, the petitioner's brother, Trelris Griffin, who testified that he was also at the bar on the night of the shooting and that, during the evening, he observed one of the victims, Kendrick Walls, following the petitioner around closely. The witness further testified that he then lost track of the parties, but when he walked outside shortly before the shooting, he observed Walls, Murphy, and the petitioner engaged in a confrontation or verbal argument. Trelris Griffin testified that the confrontation appeared to be calming down, but Kendrick Walls suddenly went "bezerk" and began hitting a garbage can, causing the can to fall over and expel its contents. The witness looked away, but when he looked back, he observed that Walls had approached close to the petitioner, and the witness observed Walls make a "thrust[ing]" movement in the direction of the petitioner, as if about to attack him. The witness then heard a single gunshot. After that initial gunshot, the witness observed the second victim, Kelvin Murphy, rush toward the petitioner, whereupon the witness heard a second gunshot. According to the witness, he did not see either of the victims strike or "do anything" to the petitioner prior to the shooting, and he did not testify that he observed either of the victims in possession of a firearm or other weapon.

<u>Procedural History</u>

The petitioner was charged, by Grand Jury Indictment, with one count of second degree

murder as to Kelvin Murphy and one count of attempted second degree murder as to Kendrick Walls. After a jury trial conducted in August, 2006, the petitioner was convicted as charged. He filed written motions for a new trial and for post-verdict judgment of acquittal and submitted an oral motion to modify the verdict, which motions were denied at a hearing conducted on September 12, 2006. The petitioner was thereafter sentenced, on September 18, 2006, to life imprisonment in connection with the second degree murder charge, without the benefit of probation, parole or suspension of sentence, and to fifty (50) years in confinement in connection with the attempted second degree murder charge, with these sentences to be served concurrently. During the same sentencing hearing, the petitioner also pleaded guilty to a separate unrelated charge of unauthorized entry of an inhabited dwelling, and the trial court sentenced the petitioner to serve three (3) years in confinement in connection with that separate charge, with that sentence to be served concurrently with any other sentence that the petitioner was serving.

The petitioner appealed his convictions and sentence, asserting (1) that the evidence was insufficient to support the verdict because the State had failed to prove that the petitioner possessed the specific intent to kill or inflict great bodily harm relative to the victims, and (2) that the sentence imposed was excessive because the trial court had erred in imposing the three-year sentence in connection with a separate offense that was not mentioned in the indictment or addressed during the trial. On February 8, 2008, the Louisiana Court of Appeal for the First Circuit affirmed the convictions and sentences. *See State v. Griffin,* 977 So.2d 305, 2008 WL 426490 (La. App. 1ˢᵗ Cir. 2008). The petitioner thereafter filed a *pro se* application for supervisory review before the Louisiana Supreme Court, asserting that (1) the First Circuit Court erred in rejecting the petitioner's sufficiency-of-the-evidence claim, (2) the prosecution failed to

prove that the petitioner possessed the specific intent to kill or inflict great bodily harm, (3) the evidence at trial established, instead, that the petitioner committed the offenses in the heat of passion, and (4) the trial court erred in accepting the jury's verdict when the evidence failed to show that the petitioner possessed the requisite specific intent to kill or inflict great bodily harm. Pursuant to decision dated October 10, 2008, the Louisiana Supreme Court denied review of the petitioner's application, without comment. *See State v. Griffin,* 993 So.2d 1281 (La. 2008). Upon the failure of the petitioner to thereafter file an application for a writ of certiorari in the United States Supreme Court, his conviction became final on February 7, 2008, upon the expiration of the ninety-day period allowed for him to do so.

On or about October 27, 2008,[2] the petitioner filed an application for post-conviction relief ("PCR") in the state trial court, wherein he asserted the claims that (1) he was provided with ineffective assistance of counsel when his attorney prevented him from testifying at trial, and (2) the State violated *Brady v. Maryland, supra*, by failing to disclose to the defense statements made prior to trial by two witnesses, William and Lacey Henderson, which statements

---

2. Although the petitioner's *pro se* application for post-conviction relief was docketed as filed in the state trial court on October 29, 2008, the United States Court of Appeals for the Fifth Circuit has concluded that federal habeas courts within the State of Louisiana must apply Louisiana's "mailbox rule" when determining the filing date of a petitioner's state court filings. Accordingly, pleadings submitted by a habeas petitioner are considered to be "filed" in state court as of the moment that the prisoner places them in the prison mail system for filing, not on the date that the pleadings are ultimately docketed by the receiving court. *See Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006); *Lane v. Rogers*, 2012 WL 3160034, *1 n. 3 (E.D. La. June 21, 2012). Accordingly, inasmuch as the petitioner apparently signed his supplemental application on October 27, 2008, and presumably gave it to prison officials for filing on that date, the Court will utilize that date as the presumptive date of filing. In addition, in hereafter referencing the dates of filing of the petitioner's various pleadings in the state courts and in this Court, the Court will utilize the dates that the petitioner signed his respective pleadings as the date of filing thereof in the respective courts.

could have been used to impeach the witnesses at trial. After an evidentiary hearing conducted on October 7, 2010, at which the petitioner testified and was represented by retained counsel, the trial judge denied the petitioner's application.

After the Ruling on his PCR application, on or about October 25, 2010, the petitioner, through his attorney, filed a "Motion for Appeal," which Motion was granted by the trial court, and the trial court set a return date of January 15, 2011, for filing an appeal. The Motion for Appeal, however, was filed in error because Louisiana law does not permit an appeal to be taken from a judgment dismissing an application for post-conviction relief. *See Williams v. Cain*, 217 F.3d 303, 304 (5th Cir. 2000) ("Under Louisiana law, [the petitioner] could not appeal from the trial court's denial of his application for post-conviction relief"). Instead, the proper procedure would have been for the petitioner to file a supervisory writ of discretionary review in the state appellate court. *Id.* ("Louisiana law requires an unsuccessful [PCR] applicant to seek review through an application for a supervisory writ"). Accordingly, when the petitioner thereafter filed an appellate brief in the First Circuit court on or about February 21, 2011, the State responded by filing a Motion to Dismiss the Appeal as improper on March 4, 2011, which Motion was granted by the appellate court on April 18, 2011 (Tr. Rec. 588), dismissing the petitioner's appeal. The petitioner thereafter filed a proper supervisory writ application, seeking discretionary review in the appellate court, on or about May 16, 2011, asserting the single claim that the trial court had erred in denying the petitioner's application for post-conviction relief because the petitioner had been prevented from testifying at trial by his attorney. Pursuant to decision dated September 26, 2011 (Tr. Rec. 589), the First Circuit court denied the petitioner's writ application without comment. In addition, the petitioner's subsequent application for supervisory review before the

Louisiana Supreme Court was also denied, without comment, on March 30, 2012. *See State v. Griffin*, 85 So.3d 114 (La. 2012).

Finally, on or about September 3, 2012, the petitioner filed the instant application for habeas corpus relief in this Court. The State contends that the petitioner's application is untimely and, in the alternative, that it is subject to dismissal, in part for failure to exhaust state court remedies and in part as being without substantive merit.

## LEGAL ANALYSIS

### Contrary To The State's Assertion, The Petitioner's Application Is Timely

Pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody. This limitations period runs from the date upon which the pertinent judgment becomes final through the conclusion of direct review or through the expiration of the time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). As provided by the statute, the time during which a properly filed application for state post-conviction or other collateral review is pending with respect to the pertinent judgment or claim shall not be counted toward any part of the one-year limitations period. 28 U.S.C. § 2244(d)(2). To be considered "properly filed" for purposes of § 2244(d)(2), an application's delivery and acceptance must be in compliance with the applicable laws and rules governing filings. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005), *citing Artuz v. Bennett*, 531 U.S. 4, 8 (2000). A state application is considered to be "pending" both while it is before a state court for review and also during the interval of time after a lower state court's ruling disposing of an application when the petitioner is authorized by state procedural law to file an application for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).

In the instant case, the petitioner's conviction became final on January 8, 2009, ninety days after the October 10, 2008, denial of his application for supervisory review in the Louisiana Supreme Court in connection with his direct appeal. Inasmuch as the petitioner filed his initial application for post-conviction relief in the state trial court on October 27, 2008, prior to that date of finality, it appears that no time elapsed on the one-year time clock prior to the commencement of state post-conviction review proceedings.[3]

Upon the filing of the petitioner's PCR application on October 27, 2008, the limitations period became tolled, and it remained tolled until October 7, 2010, on which date the state trial court denied the petitioner's application. Pursuant to Rule 4-3 of the Uniform Rules, Louisiana Courts of Appeal, the petitioner then had, in the absence of an extension of time, thirty (30) days, or until November 8, 2010,[4] within which to file a timely application for a writ of supervisory review before the Louisiana Court of Appeal for the First Circuit.[5] Upon his failure to do so by that date, the limitations period began to run, and it continued to run until May 16, 2011, the date upon which he finally filed a procedurally proper application for supervisory review in the intermediate appellate court. Although the petitioner had filed an improper "Motion for Appeal"

---

3. The State's calculation incorrectly fails to recognize that the petitioner is granted the benefit of the 90-day period allowed for him to seek review in the United States Supreme Court, which period must be included in determining the finality of a state court conviction. *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).

4. Inasmuch as the thirtieth day, November 6, 2010, fell on a Saturday, the deadline was effectively extended to the next business day, Monday, November 8, 2010. *See* Fed.R.Civ.P. 6(a)(1)(C).

5. The State's calculation incorrectly fails to give the petitioner credit for the 30-day interval after denial of his PCR application in the lower state court during which he was procedurally authorized by state law to file a timely writ application in the state appellate court. *See Melancon v. Kaylo, supra*, 259 F.3d at 406.

during that period, the Court does not find that the petitioner's "appeal," being as it was an improper procedural filing and being as it was ultimately dismissed by the appellate court for that reason, tolled or interrupted the limitations period. This is because a post-conviction review proceeding must remain both pending *and* properly-filed in order for it to toll the limitations period. *See Melancon v. Kaylo, supra*, 259 F.3d at 406-07 (implicitly recognizing that PCR proceedings must remain both pending and properly filed in order for the limitations period to remain tolled). As a result, a period of one hundred eighty-nine (189) days elapsed on the one-year time clock between November 8, 2010, and May 16, 2011, on which latter date post-conviction review proceedings re-commenced and re-tolled the limitations period.

Finally, after the filing of the petitioner's writ application in the intermediate appellate court on May 16, 2011, the limitations period thereafter remained tolled (1) during the time that the application was pending before that court, (2) during the interval between denial of the petitioner's application by that court on September 26, 2011, and his subsequent timely filing of a writ application in the Louisiana Supreme Court on October 24, 2011, and (3) during the time that his application was pending before the Louisiana Supreme Court, up until the denial thereof by that Court on March 30, 2012. After that denial, the petitioner thereafter filed his habeas corpus application in this Court on September 3, 2012. As a result, an additional one hundred fifty-seven (157) days may be seen to have elapsed on the one-year time clock between the conclusion of his post-conviction relief proceedings and the filing of his federal habeas corpus application. When these 157 days are added to the 189 days which the Court has determined elapsed during the pendency of the petitioner's PCR proceedings, it is apparent that only 346 days of un-tolled time, or less than a year, elapsed during which the petitioner did not have

pending before the state courts a properly filed application for post-conviction or other collateral

review.  Accordingly, the petitioner's habeas corpus application before this Court is timely.

The Petitioner's Claims Nos. 2 And 4, Regarding The Alleged
Excessive Sentence And The Alleged Withholding Of *Brady* Evidence,
Are Subject To Dismissal For Failure To Exhaust State Court Remedies

The State next asserts that consideration of the petitioner's second and fourth claims

before this Court – that the sentence imposed against him is excessive and that the State withheld

evidence in violation of *Brady v. Maryland, supra* – is barred by reason of his failure to exhaust

state court remedies by properly presenting these claims for review before the courts of the state

of Louisiana.  This contention is well-taken.  In this regard, pursuant to 28 U.S.C. § 2254(b) and

(c), a claimant seeking federal habeas corpus relief is required to first exhaust his claims by

presenting them for review before the courts of the state in which he is confined.  The exhaustion

requirement is satisfied only when a petitioner's claims have been presented to the state's highest

court, either on direct review or on post-conviction attack.  *Rose v. Lundy*, 455 U.S. 509, 522

(1982)*; Bufalino v. Reno,* 613 F.2d 568, 570 (5th Cir. 1980).  In addition, the petitioner must have

"fairly presented" the substance of each federal constitutional claim to the state courts in a

"procedurally proper manner."  *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

Without reaching the merits of the two referenced claims, it is clear from a review of the

petitioner's application and the state court record that he has not exhausted state court remedies

relative to these claims by properly presenting them for review before the state's highest court.

First, with regard to the petitioner's claim regarding the alleged excessive sentence, whereas the

petitioner asserted this claim on direct appeal to the Louisiana Court of Appeal for the First

Circuit, he did not reiterate this claim upon subsequent review before the Louisiana Supreme

Court. Specifically, as previously noted, the only claims which the petitioner asserted in his application for supervisory review before the Supreme Court in connection with his direct appeal were relative to the alleged insufficiency of the evidence to support the convictions. Nor did the petitioner re-assert his excessive-sentence claim in connection with any of his subsequent post-conviction review proceedings. Similarly, with regard to the petitioner's *Brady v. Maryland* claim, whereas he asserted this claim in his initial PCR application in the state trial court, he failed to re-assert it in his applications for supervisory review before either the intermediate appellate court or before the Louisiana Supreme Court. Accordingly, neither of these claim has ever been properly presented to the state's highest court, either on direct review or on post-conviction attack, and they are therefore subject to dismissal for failure to exhaust state court remedies in accordance with 28 U.S.C. § 2254(b).

A habeas petitioner who has failed to properly present his federal constitutional claims to the state courts may nonetheless be considered to have "technically exhausted" his state remedies if the state courts are no longer available for a review of the claims because of a procedural bar. *See Busby v. Dretke*, 359 F.3d 708, 724 (5th Cir. 2004). Claims are considered to be "technically exhausted" when state relief is no longer procedurally available in connection with the claims, without regard to whether the claims were actually exhausted by presentation before the state courts. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). In such instance, where a petitioner "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,'" then the claims are technically exhausted and procedurally defaulted in the state court. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997), *quoting*

*Coleman v. Thompson, supra.* In such instance, federal review of the claims is precluded unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Jones v. Jones*, 163 F.3d 285, 296 (5th Cir. 1998); *Nobles v. Johnson, supra,* 127 F.3d at 423 n. 33; *Williams v. Cain*, 125 F.3d 269, 276 (5th Cir. 1997).

In the instant case, the petitioner has clearly failed to exhaust the referenced claims before the Louisiana state courts. Specifically, he has never presented these claims before the Louisiana Supreme Court, either on direct review or through post-conviction review proceedings. If the petitioner were to now assert these claims before the state courts in an application for post-conviction relief, the state courts would unquestionably reject consideration of same as procedurally barred in reliance upon article 930.8 of the Louisiana Code of Criminal Procedure, which article provides a two-year limitations period for the filing of post-conviction review applications in the state court. Article 930.8 has been found to be an independent and adequate state ground for rejecting consideration of post-conviction relief claims, and the federal courts have relied upon this statute in finding claims to be technically exhausted and procedurally defaulted. *See, e.g., Williams v. Department of Corrections,* 444 Fed. App. 833, 834 (5th Cir. 2011); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Hawkins v. Miller*, 2006 WL 3337503, 4 n. 25 (E.D. La. Nov. 16, 2006); *McDonald v. Cain*, 2006 WL 2990071, *13 (W.D. La., Sept. 8, 2006). Thus, the referenced claims may be considered to be technically exhausted in the state courts, notwithstanding that they were never properly presented before the Louisiana Supreme Court, but they are also considered to be procedurally defaulted because they would now be subject to dismissal as procedurally deficient if asserted in the state courts.

As previously noted, claims which are determined to be procedurally defaulted are not subject to federal habeas review unless the petitioner can demonstrate cause for the default and actual prejudice, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Jones v. Jones, supra*, 163 F.3d at 296. In the instant case, the petitioner has made no attempt to make the required showing. Accordingly, the referenced claims are subject to dismissal for this reason.

<u>Substantive Review Of The Petitioner's Remaining Claims</u>

Turning to a consideration of the petitioner's remaining claims, the standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Under this statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Relief is also available if the state court identifies the correct legal principle but unreasonably applies that principle to the facts of the petitioner's case or reaches a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id. See*

*also Williams v. Taylor, supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed correct, and the petitioner has the burden to rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The State contends that, applying this standard to the petitioner's claims, there is no basis for the granting of habeas corpus relief.

The Petitioner's Claim No. 1, Regarding The
<u>Alleged Insufficiency Of The Evidence, Is Without Merit</u>

The standard for testing the sufficiency of the evidence on federal habeas corpus review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Knox v. Butler*, 884 F.2d 849, 851 (5th Cir. 1989). This standard of review applies in both direct and circumstantial evidence cases. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990). In reviewing the sufficiency of the evidence under this standard, the federal habeas court must defer to the state court fact-finder's evaluation of the credibility of witnesses and the resolution of conflicts in the evidence. *Knox v. Butler, supra,* 884 F.2d at 851. *See also Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002); *Hosey v. Goff*, 2013 WL 1500883, *2 (S.D. Miss. March 11, 2013). Further, the federal habeas court's consideration of the sufficiency of the evidence is limited to a review of the record evidence adduced at the petitioner's state court trial. *Ramirez v. Dretke,* 398 F.3d 691, 694 (5th Cir. 2005); *Knox v. Butler, supra*, 884 F.2d at 852 n. 7. State law defines the substantive elements of the offense, and a state judicial determination that the evidence was sufficient to establish the

14

elements of the offense is entitled to great weight on federal habeas review. *Dickinson v. Cain,* 211 F.3d 126, *5 (5th Cir. 2000); *Hawkins v. Lynaugh*, 844 F.2d 1132, 1134 (5th Cir. 1988).

In attacking the sufficiency of the evidence in this case, the petitioner does not assert that he did not in fact shoot the victims, Kelvin Murphy and Kendrick Walls, on the night of the incident. Instead, the basis for the petitioner's assertion in this context is his contention that the evidence adduced at trial failed to establish that he had the requisite specific intent to kill or inflict great bodily harm.

In Louisiana, second degree murder is defined as "the killing of a human being ... when the offender has a specific intent to kill or to inflict great bodily harm," La. R.S. 14:30.1. To establish guilt in connection with the offense of *attempted* second degree murder, however, it is necessary for the jury to find, not just that the criminal defendant had the specific intent to inflict great bodily harm, but that the criminal defendant had the specific intent to kill. *State v. Bishop*, 835 So.2d 434, 437 (La. 2003). Specific intent may be inferred from the circumstances surrounding the offense, and the conduct of the petitioner in shooting at a person may support such an inference. *State v. Butler,* 322 So.2d 189, 194 (La. 1975); *State v. Scott*, 973 So.2d 927, 931 (La. App. 2d Cir. 2007). Manslaughter, an offense for which a responsive verdict may be issued in relation to second degree murder, is defined under Louisiana law as a homicide committed without any intent to cause death or great bodily harm or committed "in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." La. R.S. 14:31. As a defense to either charge, a petitioner may assert that his actions were legally justified under Louisiana law. An assertion that an offender's conduct is justifiable, although otherwise criminal, is a defense to prosecution

for any crime based on that conduct. La. R.S. 14:18. A homicide is justifiable only when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm, and that the killing is necessary to save himself from that danger. La. R.S. 14:20(1); *State v. Lilly,* 552 So.2d 1036, 1039 (La. App. 1st Cir. 1989). A claim of self-defense in a non-homicide context requires a dual inquiry: first, an objective inquiry into whether the force used was reasonable under the circumstances, and second, a subjective inquiry into whether the force used was apparently necessary. *State v. Hall*, 606 So.2d 972, 973-74 (La. App. 3rd Cir. 1992), *writ denied*, 644 So.2d 385 (1994).

In support of his contention that he acted in self-defense or in the heat of passion, the petitioner points to testimony adduced at trial from his brother, Trelris Griffin, that his brother observed one of the victims, Kendrick Walls, following the petitioner around all evening. Upon thereafter exiting the bar, immediately prior to the offense, the petitioner's brother observed the petitioner and the victims engaged in an argument or confrontation outside the bar. The petitioner's brother further testified that he observed Kendrick Walls go "bezerk" and begin hitting a large garbage can, causing it to fall over and expel its contents. When Trelris Griffin looked again, he observed Kendrick Walls next to the petitioner and observed Walls make a "thrust[ing]" movement, as if to attack the petitioner, whereupon Trelris Griffin heard a single gunshot. Tr. Rec. at p. 409. According to Trelris Griffin, after this initial gunshot, the second victim, Kelvin Murphy, moved toward the petitioner, and the petitioner then fired a second shot. According to the petitioner, this testimony establishes that the shootings took place in the heat of passion or in self-defense and thus make clear that the evidence was insufficient to establish the offenses of second degree murder and attempted second degree murder.

Notwithstanding the foregoing testimony by the petitioner's brother, the State subjected that witness to a vigorous and effective cross-examination, during which the witness' testimony regarding only two shots being fired by the petitioner was contradicted by evidence establishing that Kelvin Murphy was shot twice and Kendrick Walls was shot three times. Further, the witness' testimony that both victims were shot in response to aggressive and confrontational action was contradicted by other evidence introduced at trial showing that both victims were shot from behind and, in light of the absence of stippling or gun powder residue to the deceased's body, were shot from a distance of more than three or four feet away. In addition, the surviving victim, Kendrick Walls, testified that there was no argument or confrontation outside the bar prior to the shooting and that the petitioner simply shot Murphy in the back of the head as the victims were leaving the bar, that Murphy then stumbled back toward the bar, and that the petitioner then shot Walls from behind as Walls attempted to follow Murphy, and shot Walls again as he lay on the ground. There was no evidence to suggest that either Walls or Murphy possessed a firearm or other weapon, and the evidence was undisputed that the shell casings recovered from the scene all originated from a single weapon.

Based on the foregoing, the state appellate court found, viewing the evidence in the light most favorable to the prosecution, that:

> [T]he evidence sufficiently negated the possibility that the defendant acted in self-defense with respect to either victim.... Walls testified that there was no confrontation involving the defendant before the shots were fired. Moreover, Dr. Corrigan found no stippling marks or powder burns near Murphy's wounds that would indicate Murphy was closer than three or four feet to the shooter when the weapon was fired at him. Finally Trelris claimed the defendant only shot each victim one time, but the victims each had three gunshot wounds.... Further, we find that a rational trier of fact could have inferred that the defendant possessed the specific intent to kill. The evidence showing that the defendant fired a lethal weapon at both Walls and Murphy, is clearly sufficient to prove he had the specific intent to kill.

*State v. Griffin, supra*, 2008 WL 426490 at *4.

It is not this Court's function to determine what the jury could have found if only it had viewed the evidence differently. Instead, the Court's role is to determine whether the evidence, viewed in a light most favorable to the prosecution, was sufficient to prove every element of the crime beyond a reasonable doubt. Further, as noted above, this Court is limited to determining whether the Louisiana courts unreasonably applied the due process standards of *Jackson v. Virginia, supra*, in affirming the petitioner's conviction. Under 28 U.S.C. § 2254(e)(1), a determination of a factual issue shall be presumed correct, and the petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence.

In light of the foregoing standard, the Court finds no unreasonable application of *Jackson v. Virginia* and the Due Process Clause. Viewing the evidence in the light most favorable to the prosecution, the jury could have believed, as found by the state appellate court on direct appeal, that the armed petitioner fired multiple shots at two unarmed victims, both of whom had their backs turned to the petitioner at the time and neither of whom were in close proximity to the petitioner, after which the petitioner left the scene of the altercation. Further, the jury could reasonably have found that these actions by the petitioner were not legally justified and were, instead, undertaken with the specific intent to kill. Accordingly, this Court is unable to conclude that the state court unreasonably applied the standard set forth in *Jackson v. Virginia, supra*, and the petitioner's contention is without merit relative to this claim.

### The Petitioner's Claim No. 3, Regarding Alleged Ineffective Assistance Of Trial Counsel, Is Without Merit

The petitioner next asserts that he was provided with ineffective assistance of counsel because his attorney prevented him from testifying at trial and never explained to him that he had

an absolute constitutional right to testify. In this regard, a habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id.*

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See, e.g., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See, e.g., Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988). This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial. *Martin v. McCotter, supra*, 796 F.2d at 817. Great deference is given to counsel's exercise of professional judgment. *Bridge v. Lynaugh, supra*, 838 F.2d at 773; *Martin v. McCotter, supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors. *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988). To satisfy the prejudice prong of the *Strickland* test, it is not

sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding. *Strickland v. Washington, supra*, 466 U.S. at 693. Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *Martin v. McCotter, supra*, 796 F.2d at 816. The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome." *Id.* at 816-17. Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

The above showing is one that the petitioner cannot make in the instant case. With regard to whether an attorney has rendered deficient performance by interfering with a petitioner's right to testify, the courts have recognized that an attorney's decision not to call a criminal defendant to testify is normally "part of counsel's trial strategy" and is a "judgment call which should not easily be condemned with the benefit of hindsight." *See United States v. Mullins*, 315 F.3d 449, 453 (5th Cir. 2002). However, at the same time, "it cannot be permissible trial strategy, regardless of its merits otherwise, for counsel to override the ultimate decision of a defendant to testify contrary to his advice." *Id.* In the instant case, whereas the petitioner contends that his attorney refused to allow him to testify, notwithstanding a stated wish to do so, this is a conclusory assertion that is not borne out by the record. The state trial court conducted an evidentiary hearing relative to this issue, and the petitioner's attorney testified that he

conferred with the petitioner both prior to and during trial and ultimately advised the petitioner

that it would not be in the petitioner's best interest to testify. Although the petitioner expressed a

wish to do so, the petitioner's attorney advised against it for several reasons, among which were

the devastating cross-examination of the petitioner's brother and the absence of any evidence to

corroborate the petitioner's planned assertion that one or both of the victims had possessed a

firearm, after which consultation the petitioner accepted the attorney's advice, "didn't say

anything else about it," and did not continue to insist upon testifying. Tr. Rec. at pp. 572-73.

Whereas the petitioner's attorney acknowledged that he never explicitly advised the petitioner

regarding the petitioner's absolute constitutional right to testify, the attorney also never advised

the petitioner that he could not testify and did not otherwise interfere or refuse to allow the

petitioner to testify. Upon further questioning by the trial judge, the petitioner's attorney

asserted that he had engaged in numerous consultations with the petitioner prior to trial, and it

was the attorney's belief, in the context of those conversations, that the petitioner had fully

understood that he could insist upon testifying and, based on the attorney's advice at trial, had

ultimately acquiesced in the attorney's opinion that he should not do so. *Id.* at p. 579. Even the

petitioner acknowledged in his testimony at the hearing that his attorney had never explicitly told

him that he could not testify. *Id.* at p. 583. Instead, as stated by the petitioner:

> A.  I knew I could testify on my behalf. I knew I could do that. I didn't know it was my right to know that I could testify no matter what he said. I didn't know that part.
>
> Q.  But you did know that you could testify, because, in fact, you were planning to testify?
>
> A.  That's right.

*Id.* at p. 583.

Based on the foregoing, the trial court rejected the petitioner's contention that he was prevented from testifying by his attorney's conduct. As specifically stated by the trial judge at the conclusion of the evidentiary hearing:

> The application for post-conviction belief is denied for the follow [sic] reasons. When the trial was going on, all testimony had been gathered up and it was down to the last thing, him, are you going to testify or not. And I took a break so they could discuss that. Now, I can't imagine me letting you discuss whether you are going to testify or not if you don't know you can do it. That makes no sense. And they talked about it. They sat on the side and they discussed it back and forth, and he came back to me and said, Judge, he is not going to testify.... Did he know he could testify? Absolutely he knew he could testify. Was he told he had the absolute right to it? I don't know if that happened. But I don't know if those magical words have to be said, you have that absolute right whether I say to or not. He knew based on the circumstances that he could. But I think he chose his attorney's trial strategy and his advice and decided not to testify so as to not be caught up in an impeachable situation whereby his credibility could really be battered. And I think it was just trial strategy and I think he accepted his attorney's advice on that. I don't think it was his attorney's insistence. I don't think his attorney said you can't do it. I think his attorney probably said I would advise you against that, I don't think it's a good idea based on the evidence that we have. And choosing trial strategy is different from not knowing you can or cannot. So for that reason, the application for post-conviction relief is denied.

*Id.* at p. 585-86.

Based on the foregoing, this Court is unable to conclude that the state trial court's determination was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The trial judge was in the best position to evaluate the credibility of the parties before him and found that, in light of the many discussions between the petitioner and his attorney regarding the potential benefits and risks involved in testifying, the petitioner was fully aware of his right to testify and ultimately acquiesced in his attorney's professional opinion that, on balance, doing so was not in his best interest. The petitioner conceded at the evidentiary hearing that he "knew [he] could testify" on his own behalf and that his attorney never actually

refused to allow him to do so.  The petitioner's attorney testified at the hearing that, after discussion, the petitioner "didn't say anything else about it" and did not continue to insist upon testifying.  It thus appears that the petitioner ultimately acquiesced in the advice of his attorney and did not take the witness stand based on that advice.  The trial court's determination in this regard was not an unreasonable determination of the facts in light of the testimony adduced at the evidentiary hearing.

In addition to the foregoing, even were the petitioner to establish that he was prevented from testifying at his criminal trial because of his attorney's deficient conduct, the petitioner would also need to establish that he was prejudiced as a result of the referenced deficiency.  *See United States v. Mullins, supra*, 315 F.3d at 456 (finding that although the petitioner's attorney in fact prevented the petitioner from testifying at trial, the petitioner could show no prejudice resulting from the attorney's deficient conduct).  In light of the overwhelming evidence of the petitioner's guilt in this case, including the fact that he admittedly fired multiple shots at the two victims, that each victim was turned away from him at the time, that the victims were not in close proximity to him when the shots were fired, and that there was no evidence suggesting that either victim was armed or had struck the petitioner prior to the shooting, there is little basis for concluding that, had the petitioner testified, the result of the proceeding would have been different, or for concluding that the petitioner's counsel's alleged errors were such as to undermine confidence in the outcome.  Accordingly, the Court finds that the petitioner is unable to show prejudice resulting from his attorney's alleged deficient conduct, and this claim is subject to dismissal for this reason as well.

<u>Certificate Of Appealability</u>

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the Petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original). In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the Court finds that reasonable jurists would not debate the denial of the Petitioner's § 2254 application or the correctness of the procedural or substantive ruling. Accordingly, it is appropriate that, in the event that the Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

<u>RECOMMENDATION</u>

It is recommended that the petitioner's application for habeas corpus relief be denied, in part as barred by failure to exhaust state court remedies pursuant to 28 U.S.C. § 2254(b), and in part as being without substantive merit. It is further recommended that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on June 27, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ORLANDO GRIFFIN (#513864)**                                    **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, WARDEN**                                          **NO. 12-0545-SDD-RLB**

## NOTICE

      Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

      In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

      ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

      Signed in Baton Rouge, Louisiana, on June 27, 2014.

                                  **RICHARD L. BOURGEOIS, JR.**
                                    **UNITED STATES MAGISTRATE**